UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| In the Matter of the Arbitration Between | : No. _____ |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., on behalf of itself and its related insurers, | : **PETITION FOR THE**<br>: **APPOINTMENT OF AN UMPIRE** |
| Petitioner, | |
| - against - | |
| SOURCE ONE STAFFING, LLC, | |
| Respondent. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Petitioner National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), the claimant in the above-referenced arbitration proceedings, by its attorneys, Sidley Austin LLP, for its petition against Respondent Source One Staffing, LLC ("Source One"), for the appointment of a neutral and qualified umpire in the underlying arbitration pursuant to 9 U.S.C. § 5, alleges as follows:

## NATURE OF THE ACTION

1.  This action arises out of Source One's continued obstruction and delay of the appointment of a neutral and qualified umpire to preside over the parties' arbitration proceeding. Despite the fact that the parties appointed their respective party-appointed arbitrators over three months ago, the party-appointed arbitrators still have not appointed an umpire for a single reason: Source One refuses to nominate a slate of experienced and qualified umpire candidates. As a result, the time limit for the appointment of an umpire, prescribed by the parties' agreement, has long passed and the matter is ripe for judicial intervention.

2. From 2004 through 2009, National Union provided Source One with insurance coverage for Source One's staffing business in California. In connection with this insurance program, the parties executed the Payment Agreement for Insurance and Risk Management Services (together with all addenda and schedules thereto, the "Payment Agreement") which, among other things, governs Source One's obligation to pay premium, reimburse National Union for loss payments, and post collateral to secure payment of Source One's future losses.

3. The Payment Agreement also requires the arbitration of any and all disputes, including, without limitation, disputes concerning Source One's various payment obligations. Under the terms of the relevant arbitration clause, the parties also agreed that they would arbitrate their disputes before a tripartite panel of arbitrators. The terms of the arbitration clause further provide that each party chooses one arbitrator, and in turn, the two party-appointed arbitrators are required to appoint a third arbitrator intended to serve as the neutral umpire of the arbitration proceedings. If the party-appointed arbitrators are unable to agree on an umpire within 30 days of their appointment, the Payment Agreement authorizes either party to make an application to this Court for the appointment of an umpire.

4. On October 27, 2010, National Union commenced the underlying arbitration by serving Source One with the Demand for Arbitration (the "Demand"). In addition to seeking recovery of the amounts Source One owes, National Union demanded that Source One appoint an arbitrator as prescribed by the Payment Agreement. Source One refused to submit the dispute to arbitration, and on December 22, 2010, National Union moved to compel arbitration. Ultimately, on February 18, 2016, the New York Court of Appeals ordered this dispute into arbitration.

5.     Despite National Union's best efforts to facilitate the commencement of the arbitration proceedings, Source One has continually sought to delay. National Union appointed Jonathan Rosen as its party-appointed arbitrator on February 26, 2016. Rather than respond in kind, Source One obfuscated, providing various excuses before finally appointing Michael Rogers on April 20, 2016.

6.     From there, the pattern of delay continued. After National Union prodded Source One's counsel, in late May 2016, the party-appointed arbitrators exchanged a list of the parties' respective slates of five umpire candidates, and distributed questionnaires to the candidates to enable evaluation of their qualifications. Those questionnaires revealed that three of Source One's nominees did not meet the qualifications required by the Payment Agreement, and that four had little or no experience serving as an arbitrator or umpire. National Union requested that Source One provide replacement, qualified nominees, but Source One has refused to do so. More recently, on August 11, 2016, one of Source One's nominees was named as the opposing party-appointed arbitrator in an ongoing matter involving National Union, making him an inappropriate choice to serve as umpire of the underlying arbitration.

7.     The time period to appoint an umpire, as set forth in the Payment Agreement, has long since elapsed. Source One's failure to nominate qualified candidates has caused an impasse in the arbitration process and, pursuant to the Payment Agreement, National Union requests that this Court resolve the impasse and appoint an arbitrator.

8.     As set forth more fully below, National Union respectfully requests that the Court appoint one of National Union's highly qualified candidates, or any member of the AIDA Reinsurance & Insurance Arbitration Society ("ARIAS") qualified under the terms of the Payment Agreement to serve as the neutral umpire in the underlying arbitration proceedings.

## THE PARTIES

9.      Petitioner National Union Fire Insurance Company of Pittsburgh, Pa. is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business in the State of New York.

10.     Upon information and belief, Respondent Source One Staffing, LLC is a limited liability company organized and existing under the laws of the State of California, its principal place of business is in the State of California, and all of its members are citizens of the State of California.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) in that the controversy is between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because Source One, by written agreement, irrevocably consented to venue in this Court with respect to any action for the relief sought herein.

## THE INSURANCE PROGRAM & PAYMENT AGREEMENT

13.     Beginning in or around October 2004, Source One procured insurance from National Union, which provided Source One with workers' compensation, commercial general liability, and commercial automobile liability coverage for its operation of a staffing company during the period October 2004 to October 2005 (the "Initial Policy").  Thereafter, Source One annually procured renewal insurance policies, which provided it with similar coverage during the period October 2005 to October 2009 (together with the Initial Policy, the "Insurance Program").

14. In addition to the policies and endorsements issued in connection with the Insurance Program, Source One's obligations regarding the payment of premiums, fees, expenses, losses, and collateral are governed by the Payment Agreement entered into by and between National Union, on behalf of itself and its related insurers, and Source One. Pursuant to the terms of the Payment Agreement, Source One must pay National Union "all [of its] Payment Obligation and . . . perform all [of its] other obligations according to [the Payment] Agreement and Schedule[s] for all entities covered by the Policies" issued for Source One's benefit and "provide . . . collateral according to [the Payment] Agreement and Schedule[s]."

## THE ARBITRATION CLAUSE

15. The Payment Agreement contains a broad arbitration clause, requiring that any dispute concerning Source One's Payment Obligation be submitted to arbitration. Source One also agreed to arbitrate "[a]ny other unresolved dispute" arising out of the Payment Agreement and conferred the arbitrators with "exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability."

16. The Payment Agreement provides for the arbitration of the parties' disputes before a tripartite panel of arbitrators, and prescribes the method for selecting the arbitrators. Specifically, the Payment Agreement provides that Source One must choose one arbitrator, National Union must choose the other, and then the party-appointed arbitrators will choose the third arbitrator. The Payment Agreement sets forth straightforward qualifications for potential arbitrators. According to the Payment Agreement, all arbitrators must qualify as:

> executive officers or former executive officers of property or casualty insurance or reinsurance companies or insurance brokerage companies, or risk management officials in an industry similar to [Source One's], domiciled in the United States of America not under the control of either party to this Agreement.

The Payment Agreement does not dictate how the party-appointed arbitrators are to select the neutral umpire, but provides that in the event "the two arbitrators fail to agree on a third arbitrator within 30 days of their appointment, either party may make application only to a court of competent jurisdiction in the City, County, and State of New York."

## THE UNDERLYING ARBITRATION AND PRIOR PROCEEDINGS

17.     During the course of the parties' relationship, National Union has always honored its various obligations to provide insurance coverage and other services to Source One as prescribed by the parties' agreements.  For its part, Source One has enjoyed the substantial benefits provided under the Insurance Program, including the payment of millions of dollars of losses on its behalf.  Source One, however, has failed to honor its contractual obligations to remit payment of loss reimbursements, premium, and collateral as required by the unambiguous terms of the Payment Agreement.

18.     As a consequence of Source One's failure to honor its contractual obligations, National Union served the Demand to commence the underlying arbitration.  The Demand seeks recovery of the amounts owed to National Union for:  (a) unpaid loss reimbursements; (b) premium; and (c) collateral to secure the payment of Source One's future losses.  National Union also demanded that Source One appoint an arbitrator as prescribed by the Payment Agreement.

19.     On February 26, 2016, National Union appointed Jonathan Rosen as its party-appointed arbitrator.  After repeated delays, on April 20, 2016, Source One appointed Michael Rogers as its party-appointed arbitrator.  Throughout May 2016, Mr. Rosen attempted to confer with Mr. Rogers to select an umpire but was unsuccessful.  On May 20, 2016, the date by which

an umpire was to have been selected pursuant to the Payment Agreement, Source One sought an extension of that deadline.

20. On May 27, 2016, Mr. Rosen provided Mr. Rogers with a slate of five umpire candidates nominated by National Union. Each of National Union's nominees meets the Payment Agreement's qualification criteria. Moreover, National Union's nominees all have extensive prior experience serving as arbitrators and umpires in insurance and reinsurance disputes, and each is certified by ARIAS, a non-profit educational society that provides training for insurance and reinsurance professionals.

21. That same day, Mr. Rogers proposed five umpire candidates nominated by Source One. Three of those nominees do not meet the minimum qualifications required by the Payment Agreement, and four have little or no prior experience serving as arbitrators or umpires in insurance disputes. On July 15, 2016 and July 21, 2016, National Union requested that Source One provide replacement, qualified nominees for the candidates that did not meet the minimum qualifications prescribed by the Payment Agreement by July 22, 2016, and indicated that if Source One failed to do so, National Union would request that a court appoint the umpire. To date, Source One has failed to provide replacement nominees, failed to acknowledge that its nominees do not meet the Payment Agreement's requirements, and failed to respond to National Union's correspondence. In addition, on August 11, 2016, one of Source One's umpire nominees, William D. Hager, was appointed as the non-neutral, opposing party-appointed arbitrator in an ongoing matter involving National Union.

22. The timeframe for the appointment of an umpire expired on May 20, 2016. Accordingly, per the terms of the Payment Agreement, National Union moves this Court to appoint a qualified, neutral umpire to preside over the underlying proceedings.

## NATIONAL UNION'S PROPOSED CANDIDATES ARE QUALIFIED

23. Each of the candidates proposed by National Union is supremely qualified to serve as the neutral umpire of the tripartite panel in the underlying arbitration proceedings. Not only does each of the proposed candidates meet the requirements set forth in the Payment Agreement, they also have substantial industry experience and are certified by ARIAS, a not-for-profit organization "that promotes improvement of the insurance and reinsurance arbitration process for the international and domestic markets." Finally, none of the proposed umpire candidates has any affiliation or connection with National Union or any of its affiliated companies.

24. **John T. Andrews Jr.**: Mr. Andrews is an attorney who has practiced in the insurance and reinsurance industry for three decades. He has served as Senior Vice President and General Counsel of Primerica Corporation and as Senior Vice President and General Counsel of SCOR Reinsurance Company. As such, Mr. Andrews is qualified under the terms of the Payment Agreement to serve as umpire in this dispute. In addition, Mr. Andrews has served as General Counsel of Prudential Reinsurance Company and as General Counsel of American Can Company. Mr. Andrews has acted as umpire in 14 insurance and reinsurance disputes, and as arbitrator in five such disputes. He is an ARIAS-certified arbitrator.

25. **Peter H. Bickford**: Mr. Bickford previously served as an executive officer and General Counsel and Secretary of the New York Insurance Exchange and, therefore, is qualified to serve as an umpire under the terms of the Payment Agreement. Mr. Bickford has served as an umpire in 23 arbitration proceedings concerning insurance or reinsurance disputes and as an arbitrator in 26 proceedings concerning such disputes. Mr. Bickford was also the co-founder of a

boutique insurance and reinsurance law firm, and co-chair of the insurance corporate and regulatory group of a large law firm. Mr. Bickford is certified by ARIAS as an arbitrator.

26. **Charles G. Ehrlich**: Mr. Ehrlich previously served as an executive officer of, among many others, Fairmont Insurance Company, and therefore, is qualified under the Payment Agreement to serve as umpire in this dispute. He is an attorney with over forty years' experience in insurance matters. He has served as an arbitrator in six proceedings pertaining to insurance or reinsurance disputes, and as an umpire in six such proceedings. Mr. Ehrlich is an ARIAS-certified arbitrator.

27. **Elizabeth Thompson**: Ms. Thompson has served as an executive officer and Chief Legal Officer and General Counsel for Electric Insurance Company and, therefore, is qualified to serve as umpire under the terms of the Payment Agreement. Ms. Thompson has served as an umpire in 68 arbitration proceedings concerning insurance or reinsurance disputes and as an arbitrator in 30 such proceedings. Ms. Thompson is certified by ARIAS as an arbitrator.

28. **Jeremy R. Wallis**: Mr. Wallis has worked in the insurance industry for the past 50 years. In addition to various other positions, Mr. Wallis served as an executive officer of Chatham Reinsurance Corporation and, therefore, is qualified to serve as umpire under the terms of the Payment Agreement. Mr. Wallis has served as an umpire in 23 arbitration proceedings concerning insurance or reinsurance disputes and as an arbitrator in 58 proceedings concerning such disputes. Mr. Wallis is also certified by ARIAS as an arbitrator.

## THE ARBITRATORS HAVE NOT APPOINTED AN UMPIRE

29. Despite National Union's best efforts to facilitate the appointment of an umpire in accordance with the Payment Agreement, and its nomination of five highly qualified, neutral,

and experienced candidates, the party-appointed arbitrators have not reached an agreement regarding the selection of a neutral, qualified umpire to preside over the underlying arbitration proceedings within the prescribed timeframe.  This impasse is a direct result of Source One's failure to nominate qualified or experienced umpire candidates.  Source One's inaction in this regard is part and parcel of its ongoing strategy to delay these proceedings and avoid payment of the millions of dollars owed to National Union.

## CAUSE OF ACTION
**(Appointment of Arbitrator)**

30. National Union repeats and realleges the allegations set forth in paragraphs 1 through 29 above as if fully set forth herein.

31. Pursuant to 9 U.S.C. § 5, and in accordance with the Payment Agreement, the Court has the authority to appoint an umpire to preside over the tripartite arbitration panel prescribed by the Payment Agreement if the party-appointed arbitrators do not select one within thirty days of their appointment.

32. More than thirty days have passed since the appointment of the party-appointed arbitrators without the selection of an umpire to preside over the underlying arbitration proceedings.

33. No prior application for the relief sought herein has been made.

34. National Union respectfully requests that the Court appoint one of the candidates it nominated, or any other member of ARIAS qualified under the terms of the Payment Agreement, to serve as the neutral umpire in the underlying arbitration proceedings.  A directory of the members of ARIAS is located at http://www.arias-us.org/index.cfm?app=search.

**PRAYER FOR RELIEF**

WHEREFORE, National Union respectfully requests an Order appointing one of its candidates, or any other member of ARIAS qualified under the terms of the Payment Agreement, to serve as the umpire in the underlying arbitration proceedings and granting such other and further relief as the Court deems just and proper.

Dated: New York, New York  
       August 15, 2016

SIDLEY AUSTIN LLP

By:     /s/ Andrew D. Hart  
Nicholas P. Crowell  
ncrowell@sidley.com  
Andrew D. Hart  
ahart@sidley.com  
Francesca E. Brody  
fbrody@sidley.com  
787 Seventh Avenue  
New York, NY 10019  
Tel: (212) 839-5300  
Fax: (212) 839-5599

*Attorneys for Petitioner National Union Fire Insurance Company of Pittsburgh, Pa.*